IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE TOLEDO BLADE CO., an operating division of Block Communications, Inc., JETTA FRASER, and TYREL LINKHORN, | ) ) ) ) ) ) | Case No.: <br><br> Judge: <br><br> VERIFIED COMPLAINT FOR DAMAGES AND FOR DECLARATORY AND INJUNCTIVE RELIEF, WITH DEMAND FOR TRIAL BY JURY |
|     Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES OF AMERICA, CHARLES T. HAGEL, in his official capacity as United States Secretary Defense, LT. COL. MATTHEW HODGE personally and in his official capacity as Commandant of the Joint Systems Manufacturing Center, LT. [First Name Unknown] STELZER, personally and in his official capacity as a member of the Military Police, [Military Rank and First Name Unknown] WORKMAN, personally and in his official capacity as a member of the Military Police, and [Military Rank and First Name Unknown] SNYDER, personally and in his official capacity as a member of the Military Police, and MICHELLE [Military Status and Last Name Unknown], personally and in her official capacity as an agent or employee of the United States Department of Defense. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Fritz Byers (0002337) <br> 414 N. Erie St., 2nd Floor <br> Toledo, Ohio 43604 <br> Phone: 419-241-8013 <br> Telecopier: 419-241-4215 <br> E-mail: fritz@fritzbyers.com <br><br> Counsel for Plaintiffs |

**PRELIMINARY STATEMENT**

(1) This action arises out of the unlawful conduct of the Defendants, members of the United States military police and others, acting under color of the authority of the United States Department of Defense, at or near a facility located in Allen County, Ohio, and under the control of the said Department. While lawfully present in a public area at or near this facility, Plaintiffs Jetta Fraser and Tyrel Linkhorn, acting in the employ and on behalf of Plaintiff The Toledo Blade Co., were engaged in the entirely lawful and constitutionally protected conduct of taking photographs of matters that were and are entirely open and visible to the public. Plaintiffs were in fact engaged, and were known to the defendants to be engaged, in this constitutionally protected activity for the purpose of gathering information for possible publication and dissemination to the public through newspapers and others media.

(2) The unlawful conduct of the Defendants includes:

    (A) the unlawful detention of Plaintiffs Jetta Fraser and Tyrel Linkhorn;

    (B) the unlawful physical restraint of Plaintiff Fraser accompanied by unlawful threats of bodily harm;

    (C) the unlawful confiscation of personal property in the lawful possession of Plaintiffs Fraser, Linkhorn, and belonging to The Toledo Blade Co., and the unlawful destruction of portions of the confiscated property; and

    (D) the prevention of Plaintiffs' lawful exercise of their rights under the United States Constitution to lawfully acquire and disseminate information.

(3) In each of these respects, the conduct of the Defendants deprived the Plaintiffs of their rights under the First, Fourth, and Fifth Amendments to the United States Constitution,

and under the First Amendment Privacy Protection Act, 42 U.S.C. § 2000aa *et seq.* The Defendants' conduct was tortious, causing injury to Plaintiffs' persons and property.

(4)  In this action, Plaintiffs seek compensatory and punitive damages to redress the harms caused by the unlawful conduct of the Defendants, as well as declaratory and injunctive relief, and attorney fees.

## JURISDICTION

(5)  This action arises in whole or in part under the Constitution, laws, or treaties of the United States, and the Court therefore has jurisdiction under 28 U.S.C. § 1332. To the extent that the action involves claims under the First Amendment Privacy Protection Act, 42 U.S.C. § 2000aa *et seq.*, the Court also has jurisdiction under 42 U.S.C. § 2000aa-6(h). To the extent that the action involves claims arising under state law, those claims are so related to the claims in the action that arise under federal law that they form part of the same case and controversy, and the Court therefore has supplemental jurisdiction of the claims under 28 U.S.C. § 1367.

## VENUE

(6)  All or a substantial part of the events or omissions giving rise to the Plaintiffs' claims for relief occurred in Allen County, Ohio, which is located in the Western Division of the Northern District of Ohio. Venue in this District and Division is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

(7)  Plaintiff The Toledo Blade Co. ("The Blade") is an operating division of Block Communications, Inc., a corporation organized under the laws of the State of Ohio. The Blade is principally engaged in the publication of a newspaper of general circulation. In this

enterprise, The Blade employs, among others, reporters, photographers, and editors who act on behalf of the The Blade and on behalf of the general public in gathering information by various means, including the use of photography, as a basis for publication of information that affects the public interest.

(8) Plaintiff Jetta Fraser is a natural person who resides in Lucas County, Ohio, in the Western Division of the Northern District of Ohio. She is employed by The Blade as a photographer. At the time of and during the course of her activities as described in this Complaint, she was acting as an employee of and on behalf of The Blade, and she was an authorized custodian and user of various items of personal property belonging to The Blade, including an automobile, photographic cameras, memory cards, and digital images.

(9) Plaintiff Tyrel Linkhorn is a natural person who resides in Lucas County, Ohio, in the Western Division of the Northern District of Ohio. He is employed by The Blade as a reporter. At the time of and during the course of his activities as described in this Complaint, he was acting as an employee of and on behalf of The Blade, and he was an authorized custodian of various items of personal property belonging to The Blade, including an automobile, photographic cameras, memory cards, and digital images.

(10) Defendant United States of America is a proper party under 42 U.S.C. Section 2000aaa-6.

(11) Defendant Charles T. Hagel is the duly appointed United States Secretary of Defense with responsibility for the conduct and supervision of the United States Armed Forces. He is sued in his official capacity.

(12) Defendant Lt. Col. Matthew Hodge is, and at all relevant times was, the duly appointed and commissioned Commandant of the Joint Systems Manufacturing Center (also known as the Lima Army Tank Plant). He is sued in his official and personal capacities.

(13)   Defendants Stelzer, Workman, and Snyder are, and at all relevant times were, members of the United States Army's Military Police, serving at the Center. Their first names, and as to defendants Workman and Snyder their military ranks, are at present unknown to the Plaintiffs despite Plaintiffs' reasonable efforts to ascertain them. Each is sued in his official and personal capacities.

(14)   Defendant Michelle [Last Name Unknown], is, on information and belief, an agent or employee of the United States Department of Defense. She is sued in her official and personal capacities.

## STATEMENT OF FACTS

(15)   In the early afternoon of March 28, 2014, Plaintiffs Fraser and Linkhorn were in Lima, Allen County, Ohio carrying out activities as employees of The Blade. In the course of those activities, they drove to the vicinity of the Joint Systems Manufacturing Center, also known as the Lima Army Tank Plant, which is located on Buckeye Road in Shawnee Township, Allen County, Ohio.

(16)   Plaintiffs are informed and believe, and therefore allege, that the Joint Systems Manufacturing Center is owned by and under the control of the United States Department of Defense as a contractor-operated manufacturing facility operated by General Dynamics Land Systems, an operating division of General Dynamics Corporation. Plaintiffs are further informed and believe, and therefore allege, that the Department of Defense retains full control of security and law-enforcement personnel and practices at the Joint Systems Manufacturing Center, and that the Department of Defense maintains a contingent of armed and uniformed military police as well as other civilian and military personnel at the Center for those purposes.

(17)   The entry to the Joint Systems Manufacturing Center on Buckeye Road consists of a roadway with entrance and exit lanes separated by a small traffic island. A guard hut is located located on the area between the lanes beyond the traffic island; the hut is set back from the road a distance of thirty or more feet. A U-shaped drive connects the lanes in front of the guard hut. Past the U-shaped drive, the perimeter of the Center is marked by a short chain-link fence. No portion of the fence or any gate restricts access to the part of the entry roadway located between Buckeye Road and the guard hut. There are no signs, traffic-control devices, or any other indications of limited or prohibited public access to the portion of the roadway located between Buckeye Road and the guard hut.

(18)   Detailed satellite photographic images of the Joint Systems Manufacturing Center are widely available on the Internet through sources such as Google Maps. "Street-view" images of the entry roadway and perimeter are similarly widely available on the Internet.

(19)   On March 28, 2014, in a vehicle owned by The Blade and driven by Plaintiff Linkhorn with Plaintiff Fraser as a passenger, Plaintiffs Linkhorn and Fraser drove on to the public portion of the entry roadway between the guard hut and Buckeye Road. At the time, the guard hut was unoccupied, and there were no security or law-enforcement personnel otherwise visible. Plaintiff Fraser exited the vehicle for the purpose of taking file or library photos of the publicly visible portions of the Center so that the images would be readily available for later use by The Blade as needed to illustrate newspaper stories related to the Center.

(20)   Plaintiff Fraser then took several photographs from the public portion of the roadway. In each instance, the subject of the photograph was a part of the Center that was plainly visible to the public from the public streets or the public part of the Center's entry.

(21) Having taken the photographs, using photographic equipment owned by The Blade, Plaintiffs Fraser then returned to the vehicle, and Plaintiffs Fraser and Linkhorn began to leave. They were intercepted, however, by Defendants Stelzer, Workman, and Snyder. These Defendants, who were armed and in military-police uniforms, then questioned Plaintiffs Fraser and Linkhorn regarding their identity, their employment, and their purposes for taking photographs. Both Plaintiffs Fraser and Linkhorn promptly identified themselves, explained that they were taking photographs for use by The Blade, and produced Defendants' inspection documents that bore their names and photographs, and that documented their employment with The Blade.

(22) Plaintiff Fraser had identified herself by using an employee identification card supplied by The Blade bearing her name and her photograph.. When Defendants Stelzer, Workman, and Snyder, demanded that Plaintiff Fraser produce a driver's license, she inquired why such an identification was required since she was not driving the vehicle. Defendants Stelzer, Workman, and Snyder immediately responded by ordering her to exit the vehicle, and they then placed her in handcuffs. Defendants Stelzer, Workman, and Snyder then conducted an extensive pat-down search of her person. She was required to remain with her hands cuffed behind her back for the duration of the incident, a time totaling approximately an hour.

(23) During this encounter, Defendants Stelzer, Workman, and Snyder repeatedly addressed and referred to Plaintiff Fraser in terms denoting the masculine gender. Plaintiff Fraser objected and requested that defendants employ an appropriate mode of address. Then, after Defendant Snyder had placed Plaintiff Fraser in handcuffs, he threatened a physical assault, saying "You say you are a female, I'm going to go under your bra."

(24) Plaintiffs Fraser and Linkhorn were held in custody by Defendants for up to hour and a half, during much of which time Plaintiff Fraser was handcuffed.

(25) At the beginning of the encounter, Defendants Stelzer, Workman, and Snyder seized the cameras, memory cards, and other equipment, including a pocket-sized personal calendar and notebook, that were in the possession of Plaintiffs Fraser and Linkhorn and that were and are the property of The Blade. At no time did either Plaintiff Fraser or Plaintiff Linkhorn consent to this seizure.

(26) Defendants Stelzer, Workman, and Snyder eventually released Plaintiffs Fraser and Linkhorn without making any charges that Plaintiffs had engaged in any unlawful activity. Upon releasing the Plaintiffs, however, Defendants Stelzer, Workman, and Snyder retained possession of the cameras, memory cards, and other equipment that they had seized, doing so without the consent and despite the objections of Plaintiffs Fraser and Linkhorn.

(27) Late that evening, several hours after the encounter, and only after the intervention of United States Senator Rob Portmann, Defendants permitted representatives of The Blade to recover possession of the cameras, memory cards, and other equipment that had been seized by Defendants. An inspection of these items disclosed that all of the photographs taken by Plaintiff Fraser at the Joint Systems Manufacturing Center, as well as photographs taken earlier at other locations, including all photographs of the Husky Refinery Plant, had been destroyed while the cameras and memory cards were in the possession and control of the Defendants. Plaintiffs are informed and believe, and therefore allege, that this destruction was undertaken by Defendant Michelle [Last Name Unknown], who was acting under the direction and with the assent of Defendant Hodge.

(28)　At all material times, the Defendants and each of them were acting under color of the authority of the United States and of the United States Department of Defense.

(29)　At no time did Plaintiffs or any of them consent to the seizure of their persons or property by the Defendants, and Defendants accomplished these seizures solely by force or the threat of force and under the color of authority.

(30)　At all material times, Plaintiffs Fraser and Linkhorn were present in places that were open to the public and in which Plaintiffs had a lawful right to be. At all material times, Plaintiffs Fraser and Linkhorn were engaged in fully lawful and constitutionally protected conduct, observing and photographing subjects that were and are open to public view and that Plaintiffs had full legal and constitutional rights to observe and photograph.

(31)　At no time did the Defendants or any of them have any reasonable basis of any kind to detain Plaintiffs or to seize and search their persons or property. At no time was there any probable cause or reasonable suspicion that the Plaintiffs were engaged in criminal conduct or that the seized personal property constituted the fruits, instrumentalities, or evidence of any crime.

(32)　At no time did the Defendants or any of them have any lawful basis for taking and retaining possession of Plaintiffs' personal property. Defendants' destruction of the digital photographs that were the property of Plaintiffs was effected without notice or any opportunity for Plaintiffs to be heard and without compensation.

(33)　The purpose and effect of the Defendants' conduct in seizing the persons and property of the Plaintiffs and in destroying the digital photographs seized by the Defendants was to prevent the publication of the photographs and the public dissemination of the information recorded by the photographs.

(34)    The conduct of the Defendants and each of them violated clearly established constitutional and statutory rights of the Plaintiffs that would have been known to any reasonable person in the Defendants' position.

(35)    Notwithstanding the foregoing, in communications with representatives of The Blade, the Defendants and their representatives have made clear their intention to continue in or repeat the above-described unlawful conduct by, among things, preventing persons from unlawful searcengaging in photography of the publicly visible portions of the Joint Systems Manufacturing Center, by detaining those who engage in such photography, and by confiscating equipment and destroying photographs in the same manner as occurred in the present encounter.

## Claims for Relief

### *First Claim for Relief: Deprivation of Speech and Press Rights.*

(36)    The above-described conduct of the Defendants and each of them in seizing the person and property of the Plaintiffs, and in destroying the photographs owned by Plaintiffs, with the purpose and effect of preventing the acquisition and publication of the information contained in the photographs, constituted an abridgement of the rights of the Plaintiffs to observe, record, and publish publicly available information, in violation of their rights to freedom of speech and of the press guaranteed by the First Amendment to the United States Constitution.

(37)    The above-described conduct of the Defendants and each of them in seizing and destroying the photographs owned by Plaintiffs, with the purpose and effect of preventing the acquisition and publication of the information contained in the photographs, constituted an unlawful and unconstitutional prior restraint on publication and was further accomplished

without any constitutionally required opportunity for judicial review of the restraint, all in violation of the Plaintiffs' rights to freedom of speech and of the press guaranteed by the First Amendment to the United States Constitution.

### Second Claim for Relief: Unlawful Search and Seizure.

(38) The above-described conduct of the Defendants in seizing and searching the persons and property of the Plaintiffs constituted unreasonable and unlawful searches and seizures that deprived the Plaintiffs of the rights guaranteed to them by the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures.

(39) Even if the initial stop of Plaintiffs Fraser and Linkhorn was lawful, the above-described conduct of the Defendants and each of them in purposely continuing the detention for an extended time and in handcuffing Plaintiff Fraser had no lawful basis and exceeded any lawful basis for the initial stop, and constituted a separate and distinct deprivation of the rights of the Plaintiffs to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

### Third Claim for Relief: Deprivation of Due Process Rights.

(40) The above-described conduct of the Defendants and each of them in detaining Plaintiffs Fraser and Linkhorn without any reasonable basis, and in physically restraining Plaintiff Fraser in handcuffs for an extended period without any reasonable basis of any kind, constituted a deprivation of the Plaintiffs' liberty without due process of law, in violation of the rights guaranteed by the due-process clause of the Fifth Amendment to the United States Constitution.

(41) The above-described conduct of the Defendants and each of them in seizing and then destroying the photographic images belonging to Plaintiffs without notice or an

opportunity of Plaintiffs to be heard, and without judicial process of any kind, constituted a deprivation of the Plaintiffs' property without due process of law, in violation of the rights guaranteed by the due-process clause of the Fifth Amendment to the United States Constitution.

### Fourth Claim for Relief: Unlawful Taking.

(42) The above-described conduct of the Defendants and each of them in seizing and then destroying the digital photographs that were the property of the Plaintiffs constituted a taking the Plaintiffs' property without compensation in violation of the just-compensation clause of the Fifth Amendment to the United States Constitution.

### Fifth Claim for Relief: False Imprisonment.

(43) The above-described conduct of the Defendants and each of them in purposely detaining Plaintiffs Fraser and Linkhorn through force, the threat of force, and physical restraints, without any lawful basis for doing so, constituted an unlawful and unprivileged wrongful confinement of Plaintiffs Fraser and Linkhorn.

(44) Even if the initial stop of Plaintiffs Fraser and Linkhorn was lawful, the above-described conduct of the Defendants and each of them in purposely continuing the detention for an extended time and in handcuffing Plaintiff Fraser had no lawful basis and exceeded any lawful basis for the initial stop, and constituted an unlawful and unprivileged wrongful confinement of Plaintiffs Fraser and Linkhorn.

### Sixth Claim for Relief: Civil Assault.

(45) The above-described conduct of the Defendants and each of them was undertaken with the purpose to cause an imminent apprehension by Plaintiffs Fraser and Linkhorn that Defendants would subject these Plaintiffs to harmful or offensive physical contact, and the

conduct did in fact cause such an apprehension. The conduct therefore constituted an unlawful and unprivileged assault.

(46) The above-described conduct of the Defendants and each of them in threatening to engage in an intrusive physical search of Plaintiff Fraser's person was undertaken with the purpose of causing in her an imminent apprehension that she would be subjected to harmful and offensive contact by the Defendants, and the conduct did in fact cause such an apprehension. The conduct therefore constituted an unlawful and unprivileged assault.

### Seventh Claim for Relief: Civil Battery

(47) The above-described conduct of the Defendants and each of them in physically searching the person of Plaintiff Fraser without her consent and without any reasonable basis for doing so was undertaken with the purpose and effect of causing a harmful or offensive contact by the Defendants with her person. The conduct therefore constituted an unlawful and unprivileged battery.

(48) The above-described conduct of the Defendants and each of them in handcuffing Plaintiff Fraser without her consent and without any reasonable basis for doing so was undertaken with the purpose and effect of causing a harmful or offensive contact by the Defendants with her person. The conduct therefore constituted an unlawful and unprivileged battery.

### Eighth Claim for Relief: Trespass to Chattels.

(49) The above-described conduct of the Defendants and each of them in intentionally seizing the cameras and related personal property of the Plaintiffs and in holding these items for an extended time, all without privilege to do so, constituted a dispossession of the Plaintiffs as lawful owners or possessors of the property and a trespass to the Plaintiffs' chattels.

(50)   The above-described conduct of the Defendants and each of them in intentionally seizing and then destroying the digital photographs that were the property of the Plaintiffs impaired or destroyed the quality and value of the property and dispossessed the Plaintiffs of the property. The conduct therefore constitutes a trespass to Plaintiffs' chattels.

### Ninth Claim for Relief: Conversion.

(51)   The above-described conduct of the Defendants and each of them regarding the cameras and related equipment and the digital photographs destroyed by Defendants constituted an intentional exercise of dominion or control over these chattels which so seriously interfered with the Plaintiffs' rights to control the chattels as owners or lawful possessors that the conduct constituted a conversion of the chattels.

### Tenth Claim for Relief:
### Violation of the First Amendment Privacy Protection Act.

(52)   The camera equipment and memory cards seized by the Defendants, and the digital photographs seized and destroyed by the Defendants were work product materials or other documentary materials possessed by persons who the Defendants knew or should have known were engaged in the acquisition of information for publication and who had the purpose to disseminate the information to the public through a newspaper or other similar form of public communication in or affecting interstate commerce.

(53)   The seizure of these materials by the Defendants constituted a violation of the First Amendment Privacy Act, 42 U.S.C. § 2000aa. Pursuant to that statute, each of the Plaintiffs is entitled to an award of actual damages but not less than liquidated damages in the amount of $1,000 for each Plaintiff, together with the Plaintiffs' costs and attorney fees. 42 U.S.C. § 2000aa-6.

**WHEREFORE,**

Plaintiffs demand judgment against the Defendants and each of them, jointly and severally, as follows:

(A) that the Court enter judgment for each of the Plaintiffs for their actual damages in an amount to be determined at trial as sufficient to compensate them for the injuries caused by the wrongful conduct of the Defendants, including injuries to their person, to their property, and to their constitutional rights;

(B) that the Court enter judgment for each of the Plaintiffs in the amount of $1,000 each as liquidated damages for the Defendants' violations of the First Amendment Privacy Protection Act;

(C) that the Court enter judgment for each of the Plaintiffs for punitive or exemplary damages in an amount to be determined at trial as sufficient to deter the Defendants from engaging in similarly grossly unlawful and unconstitutional conduct in the future;

(D) that the Court enter judgment declaring that the conduct of the Defendants and each of them in seizing the persons and property of the Plaintiffs and in interfering with the Plaintiffs' lawful exercise of their constitutional rights to observe, record, and disseminate publicly available information constituted and constitutes a violation of the constitutional rights of the Plaintiffs;

(E) that the Court enter a permanent injunction prohibiting the Defendants and each of them from engaging in the same or similar conduct in the future, and in particular enjoining them from interfering with the lawful photography of publicly visible portions of the Joint Systems Manufacturing Center or any similar facility, and further enjoining them from detaining or confining any persons engaged in such activity as well as enjoining them from seizing or destroying the equipment possessed by or photographs taken by any such persons;

(F) that the Court award to the Plaintiffs their costs incurred in this action, including a reasonable attorney fee.

(G) that the Court enter such other or further relief as may be appropriate.

           /s/ *Fritz Byers*

Fritz Byers (0002337)
414 N. Erie St., 2nd Floor
Toledo, OH 43604
Phone: 419-241-8013
Telecopier: 419-241-4215
E-mail: fritz@fritzbyers.com

Counsel for Plaintiffs

VERIFICATION

I, Jetta Fraser, am a Plaintiff in this action. I have read the foregoing Verified Complaint and declare under penalty of perjury that the foregoing facts are correct and true to the best of my knowledge and belief and that those factual matters that are stated upon information and belief are believed by me to be true.

           /s/ Jetta Fraser

I, Tyrel Linkhorn, am a Plaintiff in this action. I have read the foregoing Verified Complaint and declare under penalty of perjury that the foregoing facts are correct and true to the best of my knowledge and belief and that those factual matters that are stated upon information and belief are believed by me to be true.

           /s/ Tyrel Linkhorn

## JURY DEMAND

Plaintiffs demand a trial by jury in the present case as to every question so triable.

/s/ *Fritz Byers*

Fritz Byers
Counsel for Plaintiffs